IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Case No. 2:16-cv-742-MHT-WC |
| ANTHONY THOMAS, | ) ) | |
| Defendant/Counter-Claimant/ Cross-Claimant, | ) ) ) | |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| Cross-Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On September 8, 2016, Plaintiff/Counter-Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") removed the above-styled case to this court pursuant to 12 U.S.C. § 1452(f). *See* Doc. 1 at 2-3. On October 10, 2016, the District Judge entered an Order (Doc. 14) referring the case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."

In state court, Freddie Mac filed an ejectment action against Defendant/Counter-Claimant/Cross-Claimant Anthony Thomas ("Thomas"). Freddie Mac's State Ct. Compl. (Doc. 1-1) at 2. Thomas counterclaimed for trespass, conversion, and negligence. *See* Thomas's Counterclaim (Doc. 1-2). He also asserted third-party crossclaims of wrongful foreclosure, trespass, conversion, and negligence against Cross-Defendant Wells Fargo

Bank, N.A. ("Wells Fargo"). *See* Thomas's Third Party Crossclaims (Doc. 1-4). On September 15, 2016, Freddie Mac and Wells Fargo filed a partial motion to dismiss (Doc. 5), along with answers, to Thomas's counterclaim and crossclaim (Docs. 6 & 7). The court then entered an Order (Doc. 8) directing Thomas to show cause as to why Freddie Mac and Wells Fargo's partial motion to dismiss should not be granted. Thomas filed a response, and Freddie Mac and Wells Fargo replied. *See* Docs. 15, 16. After engaging in a cursory review of Freddie Mac and Wells Fargo's motion and Thomas's response in opposition, concerns of this court's subject matter jurisdiction arose. Therefore, on November 8, 2016, the undersigned issued an Order (Doc. 18) directing Freddie Mac to show cause, if any there be, as to why the matter should not be remanded to state court. Freddie Mac filed its response (Doc. 19) to the court's show cause order on November 21, 2016. While the court's show cause order specifically permitted Thomas to respond to Freddie Mac's filing, Thomas did not file anything in response. *See* Doc. 18.

*Removal Jurisdiction Pursuant to 12 U.S.C. § 1452(f).*

Even without a challenge to the court's subject matter jurisdiction, the court is obligated to conduct a *sua sponte* examination to satisfy itself, if it can do so, that it has subject matter jurisdiction whenever the court is concerned that such jurisdiction is lacking. *See* 28 U.S.C. § 1447(c); *Am. Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17 (1951); *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) ("it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"). "Because removal jurisdiction raises significant federalism concerns,

2

federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.,* 168 F.3d at 411. Any doubt as to "jurisdiction should be resolved in favor of remand to state court." *Id.*

Upon review of Freddie Mac's response to the court's show cause order and applicable caselaw, the undersigned is satisfied that this court possesses the requisite jurisdiction to hear the parties' disputes. In its removal to this court, Freddie Mac asserted jurisdiction based upon 12 U.S.C. § 1452(f), which provides the parameters for Freddie Mac, as a limited-purpose government agency, to litigate in federal court. Twelve U.S.C. § 1452(f) reads as follows:

> Notwithstanding . . . any other provision of law, (1) [Freddie Mac] shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which [Freddie Mac] is a party may at any time before the trial thereof be removed by [Freddie Mac], without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending, or, if there is no such district court, to the district court of the United States for the district in which the principal office of [Freddie Mac] is located, by following any procedure for removal of causes in effect at the time of such removal.

A consensus has not emerged among the district courts as to whether the aforementioned statute allows Freddie Mac, as a state-court plaintiff and counter-defendant, to remove the case that it filed in state court to federal court, as such a result runs counter to the general

3

removal statute, which allows only defendants to remove cases to federal court.[1]  However, the undersigned is persuaded that the plain language of the statute, coupled with the consideration of an Eleventh Circuit holding regarding a similar statute of removal applicable to the Federal Deposit Insurance Corporation ("FDIC"),[2] allows such a result. Therefore, the undersigned will not recommend that the matter be remanded to state court, and will proceed to address Freddie Mac and Wells Fargo's partial motion to dismiss.

---

[1] *See Freddie Mac v. Brooks,* Civil Action No. 3:11cv313-WHA, 2011 WL 2619132, at * 2 (M.D. Ala. July 1, 2011) (holding removal was proper as to Freddie Mac, a state-court plaintiff and counter-defendant, because the plain language of § 1452(f) "indicates that Freddie Mac need not be a defendant to remove a case to federal court."); *Fed. Home Loan Mortg. Corp. v. Pihakis, et al.*, Civil Action No. CV-13-S-1094-S, 2013 WL 3874524, at *2 (N.D. Ala. July 25, 2013) (holding removal was proper as to Freddie Mac, a state-court plaintiff and counter-defendant, because the plain language of § 1452(f) "unlike § 1441(a), the general removal statute, states that [Freddie Mac] may remove 'any civil or other action, case or controversy . . . to which [it] *is a party*'") (emphasis in original); *Fed. Home Loan Mortg. Corp. v. Gilbert*, No. 15-5796, 2016 WL 3626827, at *3 (6th Cir. July 7, 2016) (holding removal was proper as to Freddie Mac, a state-court plaintiff, because it was named as a party in the state court case); *but see Fed. Home Loan Mortg. Corp. v. Litano*, No. 15-cv-10019-MAP, 2015 WL 3632334 at *1 (D. Mass. June 1, 2015) (holding that remand was appropriate for state-court plaintiff Freddie Mac because "[a]llowing removal in these circumstances would not only countenance blatant forum shopping, but would place [Freddie Mac] . . . 'in a uniquely privileged position with regard to removal'"); *Ocwen Loan Servicing, LLC v. Mickna*, No. 5:14-CV-05330, 2015 WL 685264 at *4 (W.D. Ark. Feb. 17, 2015) (holding that remand was appropriate for state-court plaintiff Freddie Mac, reasoning that Congress, when creating Freddie Mac as an agency for limited purposes, did not intend to give Freddie Mac "super-agency" powers regarding removal); *Fed. Home Loan Mortg. Corp. v. Amersy*, No. 13-13753, 2014 WL 1400086, at *3 (April 9, 2014) (concluding that Freddie Mac's state-court action was improperly removed because § 1452(f) is merely "an amendment to the long-standing statutory principle governing removal of actions from state to federal court . . . i.e., that only defendants [ ] remove cases."); *Fed. Home Loan Mortg. Corp. v. Shaffer*, 72 F. Supp. 3d 1265, 1268-70 (N.D. Ala. 2014) (reasoning that § 1452(f) must be read in conjunction with Title 28 as a whole to not allow removal when Freddie Mac is not a state-court defendant).

[2] In *Federal Deposit Insurance Corp. v. S & I 85-1, Ltd.*, the Eleventh Circuit held that the statute governing the FDIC's removal rights was not limited by the general removal statute requiring the FDIC to be positioned as a state-court defendant for proper removal.  22 F.3d 1070, 1072 (11th Cir. 1994).  The Circuit Court noted that it could "only assume that if Congress had intended to limit FDIC's removal rights to cases in which FDIC is a defendant, it would have said so." *Id.*

*Freddie Mac and Wells Fargo's Partial Motion to Dismiss*

Freddie Mac filed an ejectment action in the Circuit Court of Montgomery County, Alabama, on June 16, 2016. *See generally* Doc. 1. According to the state court documents filed, Thomas was living in a home located at 200 Garden Home Circle, Montgomery, Alabama, ("The Property") that Freddie Mac purchased at a foreclosure sale on April 19, 2016. Freddie Mac's Compl. (Doc. 1-1) at 1, ¶ 3; Thomas's Third Party Crossclaims (Doc. 1-4) at 1, ¶ 1. The Property was subject to a mortgage with Wells Fargo by Marie T. Randle ("Randle"). Doc. 1-4 at 1, ¶ 1. Randle died in July 2014. *Id*. at 1, ¶ 2. Over a two-year period after Randle's death, Thomas attempted to assume Randle's mortgage with Wells Fargo. *Id*. at 1, ¶¶ 4, 5. However, Wells Fargo did not allow him to assume the mortgage, and instead foreclosed on the property in April 2016. *Id*. at 1, 2-3, ¶¶ 5, 15. After the foreclosure sale occurred, Thomas requested the mortgage's pay-off amount from Wells Fargo, and was told that the amount was $15,000.00. *Id*. at 1, ¶ 6. Thomas obtained that amount in cash, and secured it within The Property. *Id*. at 1-2, ¶ 7. Subsequently, an agent of Freddie Mac and Wells Fargo changed the locks at The Property, preventing Thomas from accessing the requisite funds needed to satisfy the pay-off. *Id*. On May 9, 2016, the agent removed Thomas's personal property from The Property—including the cash—and the personal property has not been returned. *Id*. Based upon these allegations, Thomas asserts claims of trespass, conversion, and negligence against Freddie Mac, and claims of wrongful foreclosure, trespass, conversion, and negligence against Wells Fargo. *See generally* Docs. 1-2, 1-4.

5

Freddie Mac and Wells Fargo argue that Thomas's trespass claims fail because Defendants had the authority to enter the property in question. Doc. 5 at 4-5. They argue that Thomas's wrongful foreclosure claim fails as a matter of law because Thomas's allegations fail to assert that Wells Fargo used the power-of-sale provision in Randle's mortgage for an improper purpose. *Id*. at 5-6.

In his response to Freddie Mac and Wells Fargo's partial motion to dismiss, Thomas concedes that his trespass claim fails as a matter of law. Doc. 15-1 ("The trespass claim fails because all the case law supports that position and states that the action must be for wrongful foreclosure and/or breach of mortgage contract.") (emphasis removed). Accordingly, Freddie Mac and Wells Fargo's motion to dismiss is due to be granted as to that claim. Thomas argues, however, that the wrongful foreclosure claim is properly asserted and should survive. *Id*. at 4-8. Specifically, Thomas argues that, because Wells Fargo interfered with his ability to secure the debt, it is plausible that Wells Fargo's foreclosure "proceeded on grounds that were other than to secure [the] debt under the mortgage" and was thus for an improper purpose. *Id*. at 6.

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, then, a pleading is insufficient if it offers

6

only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, in order to avoid summary dismissal, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are '"merely consistent with" a defendant's liability,' however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal citations omitted).

"Alabama law is crystal clear that a wrongful foreclosure action lies only where the power of sale is exercised for an improper purpose." *Selman v. CitiMortgage, Inc.,* Civil Action No. 12-0441-WS-B, 2013 WL 838193, at *8 (S.D. Ala. March 5, 2013).³ In determining whether a foreclosure is for improper purposes and thus wrongful under

---

³ *See also Jackson v. Wells Fargo Bank, N.A.,* 90 So. 3d 168, 171 (Ala. 2012) (noting that if the power of sale is perverted from its legitimate purpose and used for the purpose of oppressing the debtor or enabling the creditor to acquire the property himself, a court of equity will enjoin or set aside the sale); *Phillips v. Mortg. Elec. Registration Sys., Inc.,* No. 5:09-cv-2507-TMP, 2013 WL 1498956, at *13 n. 13 (N.D. Ala. April 5, 2013) (noting that a claim for "wrongful foreclosure" exists under Alabama law only to the extent that it is alleged and evidence shows that the foreclosure was undertaken for an improper purpose); *In re Sharpe,* 391 B.R. 117, 153 (Bankr. N.D. Ala. 2008) ( "Under Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure."); *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan Ass'n,* 607 So. 2d 180, 182 (Ala. 1992) ("A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.").

Alabama law, the Bankruptcy Court for the Northern District of Alabama proposed consideration of the following factors: whether (1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive. *In re Sharpe,* 391 B.R. 117, 152-153 (Bankr. N.D. Ala. 2008). In addition to the considerations delineated by the *Sharpe* court, the undersigned notes that an additional improper purpose identified by the Alabama Supreme Court is "to oppress the debtor." *Paint Rock Props. v. Shewmate,* 393 So. 2d 982, 984 (Ala. 1981). Nonetheless, "[u]nder Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *In re Sharpe*, 391 B.R. at 153.

Thomas argues that he can show that Wells Fargo had an improper purpose for its foreclosure of The Property based upon the following: "(1) the mortgage debt had a payoff amount of $15,000, (2) Wells Fargo relayed this information to Thomas, (3) Thomas amassed $15,000 in cash, (4) Thomas intended to use this cash to pay off the mortgage debt, (5) that Defendants and their agents interfered with Thomas'[s] access to this cash, (6) that but for the interference Thomas would have given this money to Wells Fargo, and (7) that if the money had been given by Thomas to Wells Fargo the debt would have been secured." Doc. 15-1 at 7-8; *see also* Doc. 1-4 at 1-2. Thus, he asserts that although he was

8

willing and able to pay off the mortgage that encumbered The Property, Wells Fargo prevented him from doing so. Further, as the heir of The Property's original mortgagor, Thomas argues that he had a legal right to assume The Property's mortgage prior to the foreclosure sale, that he attempted to do so for a two-year period after Randle's death, and that Wells Fargo interfered with his right to do so.[4]  Doc. 1-4 at 2-3, ¶¶ 10-15.

Accepting Thomas's factual assertions as true, Wells Fargo not only interfered with Thomas's alleged right under federal law to assume the mortgage of Randle but also with

---

[4] Twelve C.F.R. § 1024.38(a) states that "[a] servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section." One such objective, provided in 12 C.F.R. § 1024.38(b)(vi), states that "[u]pon notification of the death of a borrower, [the mortgage servicer shall] promptly identify and facilitate communication with the successor in interest of the deceased borrower with respect to the property secured by the deceased borrower's mortgage loan."

The Consumer Financial Protection Bureau provides additional guidance for mortgage servicers regarding the "[p]olicies and procedures servicers must maintain regarding the identification of and communication with any successor in interest of a deceased borrower with respect to the property secured by the deceased borrower's mortgage loan." Consumer Financial Protection Bureau, *CFPB Bulletin 2013-12*, www.consumerfinance.gov/policy-compliance/guidance/implementation-guidance/bulletin-implementation-mortgage-servicing-rules/. CFPB Bulletin 2013-12 states:

> [A] servicer must have policies and procedures reasonably designed to ensure that, upon notification of the death of a borrower, the servicer promptly identifies and facilitates communication with a successor in interest of the deceased borrower with respect to the property that secures the deceased borrower's mortgage. In issuing this guidance, the CFPB seeks both to assist servicers in implementing these policies and procedures and to promote home retention whenever possible for successors in interest faced with the loss of their homes due to the death of a borrower.
>
> The CFPB adopted the successor in interest provision of the Policies and Procedures Rule after learning about the difficulties that some surviving spouses, children, or other successors-in-interest experienced in attempting to communicate with servicers. The CFPB has received reports of servicers either outright refusing to speak to a successor in interest or demanding documents to prove the successor in interest's claim to the property that either do not exist . . . or are not reasonably available. These practices often prevent a successor in interest from pursuing assumption of the mortgage loan and, if applicable, loss mitigation options—potentially resulting in the avoidable loss of the home.

his ability to remit the payoff amount to Wells Fargo to unencumber the property. With regards to the interference with Thomas's ability to assume the mortgage, such an interference, in and of itself, might not constitute a claim for wrongful foreclosure under Alabama law because failure to comply with federal law *prior* to a foreclosure sale does not necessarily support an inference that the power of sale was used for a purpose other than securing the mortgage debt. *See In re Anchrum*, 2013 WL 5352631, at *3 (Bank. N.D. Ala. Sept. 23, 2013) (determining that failure to comply with federal regulations prior to exercising the power of sale "does not support an inference that Wells Fargo used its power of sale for a purpose other than to secure repayment of the debt owed").[5] Nonetheless, when considering the facts alleged by Thomas surrounding this foreclosure sale, the undersigned determines that an inference has been raised that the foreclosure sale occurred for a purpose other than to secure the debt owed on the property.

Thomas alleges that he learned from Wells Fargo, on April 14, 2016—five days prior to the foreclosure sale of The Property—that the payoff for the mortgage was $15,000.00. He further asserts that he secured that amount in cash and stored it within The Property, but that an agent of Wells Fargo locked him out of the house, thereby preventing

---

[5] The undersigned notes that the *Anchrum* court, in reaching that determination, specifically stated that "the Anchrums did not allege, *even in a conclusory manner*, that Wells Fargo used the power of sale in their mortgage for any purpose other than for what it was intended, that is to secure the repayment by them of the debt they owed to that entity. Similarly, the Anchrums did not describe any facts *from which it may be inferred* that Wells Fargo used its power of sale for an unintended purpose." *In re Anchrum*, 2013 WL 5352631, at *3 (emphasis added). In contrast here, Thomas has alleged facts that raise at least an inference, as more fully discussed above, that Wells Fargo used its power of sale for an untoward purpose.

him from accessing the cash and remitting the funds.[6]  From review of the state court record, the undersigned notes that Wells Fargo sold The Property on April 19, 2016, to Freddie Mac for $60,750.00.  Doc. 1-6 at 6.  Thus, accepting as true that the mortgage's payoff was $15,000.00 and that Wells Fargo prevented Thomas from accessing the cash to satisfy the debt, Wells Fargo profited $45,750.00 by selling The Property in foreclosure.  Clearly, preventing Thomas from rendering the payoff amount resulted in a benefit to Wells Fargo that can be inferred on the face of the parties' filings.  Such an inference *could* indicate that Wells Fargo's power of sale was perverted for the purpose and benefit of Wells Fargo, and not for the purpose of securing the mortgage debt.  This inference is further supported by the facts, as alleged by Thomas, leading up to the foreclosure sale.  As previously noted, non-compliance with federal law leading up to a foreclosure sale does not necessarily support an inference that the foreclosure sale was improper.  However, in cases where a banking institution would likely profit monetarily from selling a home on the courthouse steps instead of allowing an heir or devisee to assume the mortgage, the undersigned cannot say that non-compliance with federal law does not support an inference that the mortgagee had an ill motive and used the power of sale to accomplish a significant

---

[6] The undersigned notes that Thomas does not state when he was locked out of The Property by an agent of Wells Fargo.  Thomas does state, in claims separate from his wrongful foreclosure claim, that an agent of Wells Fargo entered The Property on May 6, 2016, and May 9, 2016, and removed his personal property—including the cash.  Notably, those two dates are after the foreclosure sale of The Property.  If those are the only two dates upon which the agent interfered with Thomas's access to the cash, it would not make logical sense that those interferences prevented Thomas from accessing the cash and remitting it to Wells Fargo.  However, reading the facts in the light most favorable to Thomas, it can be concluded that a separate interference occurred prior to the foreclosure sale at which time no property was taken, but Thomas was prevented from accessing the funds to satisfy the mortgage's payoff.

financial gain. The undersigned concludes, therefore, that Thomas is at least entitled to discovery to determine whether there is evidence to support the conclusion that Wells Fargo foreclosed on The Property for a reason other than to secure the debt. Accordingly, at this time, Wells Fargo's motion to dismiss Thomas's cross-claim for wrongful foreclosure is due to be denied.

*Conclusion*

For the foregoing reasons, it is the RECOMMENDATION of the undersigned Magistrate Judge that Plaintiff/Counter-Defendant Freddie Mac and Cross-Defendant Wells Fargo's Partial Motion to Dismiss (Doc. 5) be GRANTED in part and DENIED in part. Specifically, it is the RECOMMENDATION of the undersigned that Freddie Mac's and Wells Fargo's motion to dismiss Thomas's trespass claim be GRANTED and that Wells Fargo's motion to dismiss Thomas's wrongful foreclosure claim be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 6, 2017**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to

factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

    Done this 23rd day of January, 2017.

                                                /s/ Wallace Capel, Jr.
                                                UNITED STATES MAGISTRATE JUDGE